IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEYBI SANCHEZ,                          )
                                        )
        Petitioner,             )
                                        )
  vs.                                   )  Case No. 12 C 6717
                                        )
DONALD GAETZ, Warden,                   )
                                        )
        Respondent.             )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Deybi Sanchez, an inmate in the Illinois Department of Corrections, has filed a petition for habeas corpus under 28 U.S.C. § 2254 seeking to vacate his state court conviction and sentence for aggravated kidnapping and aggravated battery. Respondent Donald Gaetz, the warden of the prison where Sanchez is incarcerated, has moved to dismiss the petition as untimely.

    A one-year limitation period applies to section 2254 habeas corpus petitions. 28 U.S.C. § 2244(d)(1). The clock starts to run from the latest of four dates. *See id.* § 2244(d)(1)(A)-(D). Two of these conceivably might apply: "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *id.* § 2244(d)(1)(A), or "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." *Id.* § 2244(d)(1)(B). The earlier of the two dates, of course, is the "finality" date

in section 2244(d)(1)(A).

Sanchez's conviction was affirmed on direct appeal on February 10, 2011. On June 1, 2011, the Illinois Appellate Court denied Sanchez leave to file a petition for rehearing. Sanchez did not file a petition for leave to appeal (PLA) in the Illinois Supreme Court. His conviction therefore became final on July 6, 2011, when the time for filing a PLA expired. See Gonzalez v. Thaler, 132 S. Ct. 641, 654 (2012). If section 2244(d)(1)(A) provides the applicable start date for the limitation period, July 6, 2011 is when the one-year clock started to run.

The certificate of service attached to Sanchez's present habeas corpus petition says that he placed the petition in the mail at Pinckneyville prison on August 9, 2012. That is considered the filing date. See Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999). Thus if the start date in section 2244(d)(1)(A) applies, Sanchez's habeas corpus petition was filed thirty-four days too late, unless he can show a basis for tolling the one-year limitation period.

A habeas corpus petitioner claiming equitable tolling bears the burden of persuasion on that issue. See Ray v. Clements, 700 F.3d 993, 1007 (7th Cir. 2012) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Under Holland v. Florida, 130 S. Ct. 2549 (2010), "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing." Id. at 2562 (internal quotation marks omitted).

In Holland, the Court provided the following guidance for how lower courts are to assess equitable tolling claims:

> We have said that courts of equity must be governed by rules and
> precedents no less than the courts of law. But we have also made clear
> that often the exercise of a court's equity powers must be made on a case-
> by-case basis. In emphasizing the need for flexibility, for avoiding
> mechanical rules, we have followed a tradition in which courts of equity
> have sought to relieve hardships which, from time to time, arise from a
> hard and fast adherence to more absolute legal rules, which, if strictly
> applied, threaten the evils of archaic rigidity. The flexibility inherent in
> equitable procedure enables courts to meet new situations that demand
> equitable intervention, and to accord all the relief necessary to correct
> particular injustices. . . . [C]ourts of equity can and do draw upon
> decisions made in other similar cases for guidance. Such courts exercise
> judgment in light of prior precedent, but with awareness of the fact that
> specific circumstances, often hard to predict in advance, could warrant
> special treatment in an appropriate case.

*Id.* at 2562 (internal quotation marks, citations, and ellipsis omitted).

The present habeas corpus petition is not the first one that Sanchez filed. He filed an earlier petition on July 10, 2011, just a few days after the date his conviction became final for purposes of the federal habeas corpus limitation period. *See Sanchez v. Madigan*, Case No. 11 C 4760. That petition was based on grounds identical to those asserted in the present petition.

The proceedings on Sanchez's first habeas corpus petition were plagued with procedural missteps. Initially, Sanchez failed to use the form that this district prescribes by local rule for section 2254 petitions. For this reason, on July 22, 2011, the Court entered an order that stated, in relevant part, as follows:

> The petition in its current form is . . . unacceptable. Because petitioner
> has not used the Court's required form, see Local Rule 81.3(a) (N.D. Ill.),
> the Court does not have the information necessary to conduct the
> preliminary review required by Rule 4 of the Rules Governing Habeas
> Corpus Cases Under Section 2254. Without the basic information elicited
> on the Court's form, the Court cannot properly make a threshold
> determination concerning whether petitioner's claims have been properly

3

> exhausted in state court and are timely. Petitioner must submit an amended petition using the required form and must fill it out completely and correctly.
>
> In addition, the amended petition should drop the State of Illinois as a respondent. The only proper respondent in a § 2254 petition is the warden of the prison where the petitioner is confined. *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997); see also Rules 2(a) and (b) of Rules Governing Section 2254 Cases. A state's attorney general is a proper party in a habeas petition only if the petitioner is not yet confined. In this case, petitioner is not challenging a future sentence, but rather his present confinement. Therefore, Illinois' Attorney General is not a proper respondent.
>
> Petitioner is granted until August 22, 2011 to submit an amended petition. The amended petition must be on the form required under Local Rule 81.3(a) of this Court. Petitioner must write both the case number and the judge's name on the amended petition and return it to the Prisoner Correspondent. As with every document filed with the Court, petitioner must include the original plus a judge's copy. The judge's copy must include a complete set of any exhibits attached to the amended petition. The amended petition replaces or supersedes the original petition. In other words, after petitioner files an amended petition, the Court will no longer consider the original petition. Thus, grounds and arguments contained in the original petition will not be considered if they are not included in the amended petition. Furthermore, inmates generally have only one opportunity to petition for a federal writ of habeas corpus. Therefore, petitioner should fill out his amended petition carefully and completely, including any and all grounds he wants the Court to consider in determining the validity of his conviction.
>
> Failure to comply with these directives within thirty days will result in summary dismissal of this case pursuant to Rule 4 of the Rules Governing Habeas Corpus Cases Under Section 2254.

*Sanchez v. Madigan*, No. 11 C 4760, Order of July 22, 2011.

Sanchez did not comply with the Court's order directing him to resubmit the petition using the appropriate form. Rather, he filed a motion asking the Court to

reinstate his original petition. The Court notes that at the time, it could not figure out why Sanchez had done this rather than taking the relatively simple step of using the form that the Clerk had sent to him along with the July 22, 2011 order. The Court will return to that topic later in this decision.

On August 15, 2011, the Court denied the motion to reinstate and again directed Sanchez to refile his petition using the appropriate form. The Court warned Sanchez that if he did not do so by September 12, 2011, it would summarily dismiss his case.

Again, however, Sanchez did not comply with the Court's order to resubmit his petition using the appropriate form. He first filed a mandamus petition in the court of appeals, asking that court to direct this Court to reinstate his original petition. *See Sanchez v. Kennelly*, Case No. 11-2945 (7th Cir.). The court of appeals denied that petition on August 29, 2011. Then, on September 18, 2011, Sanchez sent the district court clerk a letter, *see* Pet.'s Resp. to Mot. to Dismiss, Ex. A, saying that he was not going to resubmit his petition on the required form and asking for a copy of any final order so that he could appeal.

Because Sanchez did not comply with the Court's orders, on September 28, 2011, the Court entered an order dismissing his initial habeas corpus petition. The Court pauses here to note that the September 28 order simply said the petition was dismissed; it did not say whether the dismissal was with or without prejudice. In his motion to dismiss, Gaetz correctly interprets the earlier dismissal as being without prejudice (because the ground for dismissal was simply a matter of form). *See* Resp.'s Mot. to Dismiss ¶ 5. The order, however, did not say that the dismissal was without prejudice. Given the ambiguity, a prisoner in Sanchez's position likely would have

5

interpreted it as the final word on his habeas corpus petition. The Court also notes that its July 22, 2011 order, quoted above, had warned Sanchez that as a general rule, he was entitled to one, and only one, habeas corpus petition.

Following the dismissal, Sanchez attempted to appeal. On October 17, 2011, the Court declined to issue a certificate of appealability. Sanchez then filed a motion to proceed on appeal *in forma pauperis.* The Court denied the motion on Sanchez's first try, because he had not included his prison trust account information. Sanchez promptly refiled the motion, attaching the necessary information. The renewed *i.f.p.* motion was accompanied by a letter, dated November 15, 2011. *See* Case No. 11 C 4760, dkt. no. 20. In the letter, Sanchez recounted that his habeas corpus petition and other documents filed up to that point had been prepared by another inmate named Jon Cox, because Sanchez himself could not read, write, or speak English, let alone understand legal matters. Sanchez said that he had not understood what the Court had wanted and had relied on Cox to file the necessary documents, assuming that Cox was acting in his best interest. Sanchez stated, however, that a bilingual inmate who had since looked at the filings in his case (and who prepared the renewed *i.f.p.* motion and the letter for Sanchez) advised him that Cox was not acting in his (Sanchez's) best interest and had "sabotage[d]" Sanchez's case by "challeng[ing] and defy[ing] the court." *Id.* at 1-2. Sanchez reported that Cox was now in segregation at the prison due to a "discrepancy" involving his legal assistance to another inmate. Sanchez, who by this time was being assisted on his case by the bilingual inmate, said that he did not know how best to proceed.

In retrospect, the Court would have been justified had it treated Sanchez's

6

November 15, 2011 letter as a request for reconsideration of the dismissal and for another chance at filing the petition using the appropriate form. Even though Sanchez had filed a notice of appeal, the Court could have treated his request as a motion to vacate the dismissal and could have entered an order saying it was inclined to grant such a motion and asking the court of appeals to remand the case. *See, e.g., Kusay v. United States*, 62 F.3d 192, 195 (7th Cir. 1995). For better or for worse, however, the Court did not do that but instead simply granted Sanchez's renewed *i.f.p.* motion, in early December 2011.

Sanchez's case then went on pause while the Seventh Circuit had under advisement whether to grant a certificate of appealability. The request was under advisement for an extended period, about four and one half months. In mid-April 2012, the Seventh Circuit declined to issue a certificate of appealability. *See Sanchez v. Davis*, No. 11-3339 (7th Cir. Apr. 19, 2012). This had the effect of concluding Sanchez's attempt to appeal. The Seventh Circuit issued its mandate on May 11, 2012.

If Sanchez had simply filed the current petition at that point, it unquestionably would have been timely – his deadline under section 2244(d)(1)(A), absent tolling, was not until July 6, 2012. But instead, he continued to make procedural missteps. Specifically, with the assistance of the bilingual inmate referenced earlier, Sanchez promptly filed a motion asking the Seventh Circuit to recall the mandate "so that [petitioner] may have this Court direct the District Court to allow him to file a new habeas corpus petition . . . ." This filing, the Court notes, indicates that Sanchez had taken to heart what this Court had said in its July 22, 2011 regarding the general rule that a prisoner gets one, and only one, chance to file a habeas corpus petition.

7

Sanchez was now asking the Seventh Circuit to order this Court to accept a new filing, because he figured the Court would not do so on its own, given its comments in the July 22 order.

The Seventh Circuit denied Sanchez's motion to recall the mandate on June 15, 2012. By this time, however, the bilingual inmate who had been helping Sanchez had been moved to a different wing of the cell block. Sanchez says that this made it difficult to get the inmate's assistance. Specifically, Sanchez says, he had no assistance at all until August 9, 2012, when he and the other inmate were called to the prison law library at the same time. The other inmate assisted Sanchez in filling out the court-prescribed form for habeas corpus petitions. Sanchez mailed the present habeas corpus petition to the clerk of this court that same day, August 9, 2012. This time he completely filled out the proper form, and he attached to it the same document that he had previously filed as his first habeas corpus petition. This was the document that inmate Cox had prepared back when Sanchez's first petition was filed, setting forth the grounds on which Sanchez sought issuance of a writ of habeas corpus.

As the Court has indicated, assuming section 2244(d)(1)(A) applies, Sanchez's current petition was filed thirty-four days too late, unless he can show that he is entitled to equitable tolling. Sanchez argues that equitable tolling should apply due to a combination of circumstances. Gaetz argues that Sanchez has failed to show the extraordinary circumstances necessary to trigger equitable tolling, and that in any event Sanchez has not shown the required diligence.

The Court rejects Gaetz's argument that Sanchez has not been diligent. From day one, Sanchez has diligently pursued his rights In connection with his habeas corpus

petition. His first petition was filed just a few days after his conviction became final, which is *far* earlier than most habeas corpus petitioners file. And ever since that time, Sanchez has been filing document after document, in an effort to have his case heard. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 130 S. Ct. at 2565. Sanchez unquestionably exercised reasonable diligence.

Sanchez's problem is not lack of diligence but rather his procedural missteps. He initially used the wrong form; he chose to appeal rather than simply resubmitting his petition using the right form; he initially botched the *i.f.p.* motion; and he pursued fruitless remedies in the court of appeals after his request for a certificate of appealability was denied. Sanchez explains the late filing and his earlier procedural missteps as resulting from a combination of several factors: his lack of understanding of English; the unavailability of information or assistance in the Spanish language from the prison law library and his resulting need to rely on other inmates; bad and counterproductive assistance from inmate Cox; and misunderstanding prompted by the language in this Court's July 22, 2011 order indicating that he had only one chance at filing a habeas corpus petition and the unavailability of his second inmate-assistance at a critical period.

It may be that certain of these factors would not, standing alone, permit equitable tolling of the statute of limitations. A language barrier, for example, has been held to be insufficient to toll the statute of limitations. *See, e.g., United States v. Prieto*, No. 2:05-cr-139, 2012 WL 12539, at *4 (N.D. Ind. Jan. 3, 2012) (collecting cases). This case, however, involves far more than a simple language barrier. Sanchez contends that no

9

Spanish-language materials existed in the prison law library and that library law clerks offered him no assistance, thus leaving him at the mercy of "jailhouse lawyers," like Cox, to get his petition on file in timely fashion.

The Seventh Circuit has recently held that the lack of prison law library access can amount to a state-created impediment that entitles a petitioner to a later start date for the one-year limitation period under section 2255(d)(1)(B), which parallels section 2244(d)(1)(B). *See Estremera v. United States*, --- F.3d ---, 2013 WL 3880210, at *3 (7th Cir. July 30, 2013). Even if not, this could be a viable basis for equitable tolling. *See generally United States ex rel. Strong v. Hulick*, 530 F. Supp. 2d 1034, 104o-42 (N.D. Ill. 2008) (Kennelly, J.) (discussing *Moore v. Battaglia*, 476 F.3d 504 (7th Cir. 2007) and *Egerton v. Cockrell*, 334 F. 3d 433 (5th Cir. 2003)). If what Sanchez says is correct, he effectively had no law library access, because there was nothing there that he could read. Sanchez says that he attempted to get assistance from the prison law library, apprising library staff of his language problem, but was told that the library had no Spanish-speaking personnel or inmate law clerks and that he would have to try to find help from an inmate in his cellhouse.

Gaetz does not contest Sanchez's contentions on these points. In particular, Gaetz has submitted no evidence indicating that Spanish-speaking inmates at the Pinckneyville prison do, in fact, have pertinent library materials available to them in that language.

Due to the effectively lack of a law library and his own inability to communicate in English, Sanchez appears to have been entirely dependent upon Cox in determining

10

how to proceed.[1]  As the Court has indicated, Cox led Sanchez completely astray.  In particular, it is undisputed on the present record that Cox caused Sanchez to obstinately refuse to file his petition using the proper form, even though this would have been quite easy to do.  This was horrendously bad advice, though there is no way that Sanchez could have known that at the time given his dependence on Cox and the lack of Spanish-language law library materials.

Malpractice by a lawyer may, in certain circumstances, permit equitable tolling – that is what *Holland* indicates.  That said, the Court is unaware of any case, at least not in this Circuit, indicating that malpractice by a "jailhouse lawyer" like Cox is treated the same way.  That, however, misses the point.  Sanchez's problems stem from the undisputed fact that the prison lacked any library materials at all that would advise a Spanish-speaking, non-English-speaking inmate how to file a habeas corpus petition, let alone what the statute of limitations is for such a petition or how it is calculated.  Due to the effective absence of a law library or other access to pertinent information, Sanchez was completely at the mercy of jailhouse lawyers like Cox, to get a proper petition on file in timely fashion.  The Court believes that under *Estremera* and in the particular circumstances of Sanchez's case, the effective absence of a prison law library entitles him to equitable tolling or, alternatively, amounts to a state-created impediment that entitles him to a later start date for the limitation period, under section 2244(d)(1)(B).

Gaetz argues that Sanchez had plenty of time to file a proper habeas corpus petition once he was free from Cox's influence and missteps.  At that point, however, Sanchez was a victim not only of Cox having led him down the primrose path, but also

---

[1] Sanchez says that Cox "was able to communicate to a limited extent in Spanish but was not fluent."  Pet.'s Resp. to Mot. to Dismiss ¶ 2.

11

of the statement in this Court's July 22, 2011 order that a prisoner is entitled to file one, and only one, habeas corpus petition. Sanchez says that based on that statement by the Court, he (and presumably his second jailhouse lawyer) believed that his only recourse was to continue to fight the dismissal of his original petition, not file a new one. Pet.'s Resp. to Mot. to Dismiss ¶ 6.

The Court's statement that an inmate generally gets only one opportunity to petition for habeas corpus may have been literally true, but in context it was, unfortunately, quite misleading. The Court was referring to the requirement in 28 U.S.C. § 2244(b) that a petitioner obtain advance permission from the court of appeals before filing a second or successive habeas corpus petition. But Sanchez was not, and would not have been, required to jump through that hoop to refile his petition in this Court, as he has now done. Because the Court dismissed Sanchez's original petition based on a "curable technical deficiency," under controlling authority a new filing (like the petition that Sanchez now has filed) does not amount to a second or successive habeas corpus petition whose filing requires such permission. *See, e.g., Pavlovsky v. VanNatta*, 431 F.3d 1063, 1064 (7th Cir. 2005). Thus in Sanchez's case, contrary to the Court's statement, he was entitled to a second shot at filing a habeas corpus petition. Unfortunately, the Court's July 22, 2011 order indicated that the opposite was true.

It is clear from Sanchez's current submissions and confirmed by the course of events that he relied on the Court's misstatement in pursuing the futile effort to undo the court of appeals' ruling affirming the dismissal of the initial petition, rather than taking the comparatively simple step of refilling using the prescribed form. This ran Sanchez past the end of the limitation period, assuming the "finality" start date in section

2244(d)(1)(A) applies. This is a second extraordinary circumstance that entitles Sanchez to equitable tolling. The Seventh Circuit has made it clear that "'[a] litigant whose lawyer is misled by the language of a judicial order should not suffer ill consequences.'" *Holmes v. Hardy*, 608 F.3d 963, 966 (7th Cir. 2010) (quoting *Beyer v. Litscher*, 306 F.3d 504, 507 (7th Cir. 2002)). The Court sees no reason why the same should not apply to a *pro se* litigant like Sanchez, who lacked the assistance of an attorney trained in the law.

Finally, once the Seventh Circuit had rebuffed Sanchez's efforts, the bilingual inmate whose assistance Sanchez had been forced to seek was no longer available to him, at least not until August 9, 2012, the date Sanchez mailed his current petition to the clerk. This circumstance accounts for the period when Sanchez ran over the one-year limit, assuming the start date in section 2244(d)(1)(A) applied. This, again, was the direct result of the effective absence of a law library. Sanchez had access to no Spanish-language materials that he could consult to prepare his petition and understand how the limitation period works.

For these reasons, the Court concludes that Sanchez's petition is not time-barred. This is so if the circumstances referenced above, taken together, are viewed as extraordinary circumstances permitting equitable tolling or, alternatively, if the effective absence of a prison law library is considered as a basis for a later start date for the one-year period, pursuant to section 2244(d)(1)(B). Either way, Sanchez's petition is timely.

## Conclusion

For the reasons stated above, the Court denies respondent's motion to dismiss [dkt. no. 11] and directs respondent to answer the petition on its merits by no later than

13

October 22, 2013. Petitioner is directed to file a reply to the answer by no later than December 3, 2013. The Court denies petitioner's motion for appointment of counsel [dkt. nos. 16 & 17], without prejudice to filing an updated motion. The previously-filed motion for appointment of counsel is over six months old and is therefore stale. If petitioner chooses to file an updated motion, he should describe for the Court exactly what sort of legal assistance he is now getting (from other inmates or from anyone else) and would expect to get during the period when he will have to prepare his reply to respondent's answer.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 9, 2013