# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEYBI SANCHEZ, | ) |
|         Petitioner, | ) |
| vs. | )     No. 12 C 6717 |
| DONALD GAETZ, | ) |
|         Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2009, after a bench trial, an Illinois judge convicted Deybi Sanchez of aggravated kidnapping and aggravated assault in connection with the abduction and beating of Katina Lionikis on a Chicago street in 2005. The judge imposed concurrent prison sentences of eighteen and five years. Sanchez appealed, challenging his sentence as excessive, but the Illinois Appellate Court affirmed the trial court's judgment. Sanchez did not file a petition for leave to appeal (PLA) with the Illinois Supreme Court. Nor did he file a post-conviction petition under 725 ILCS 5/122-1.

After Sanchez's conviction became final in 2011, he filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court denied a motion to dismiss filed by Donald Gaetz, the warden of the prison where Sanchez is incarcerated, finding that Sanchez's petition was not time-barred. *See Sanchez v. Gaetz*, No. 12 C 6717, 2013 WL 4836697 (N.D. Ill. Sept. 9, 2013). Respondent Gaetz now argues that all of Sanchez's claims are defaulted, because he did not present them to the Illinois

Supreme Court in a PLA. He also argues that each of the claims lacks merit. For the following reasons, the Court denies Sanchez's petition.

## Background

**A.	State court proceedings**

Sanchez was arrested just after midnight on September 30, 2005, near the corner of Whipple Street and Bloomingdale Avenue in Chicago. He was charged with aggravated kidnapping and aggravated battery. Before his trial, Sanchez made a motion to suppress statements he made to police after his arrest, contending that he was intoxicated when arrested, which rendered him incapable of understanding *Miranda* warnings. The court denied the motion.

Sanchez's bench trial commenced in April 2009. Katina Lionikis testified that Sanchez kidnapped and beat her while she was walking home from work on September 30, 2005. The prosecutor also called two Chicago police officers as witnesses, one of whom apprehended Sanchez while he was beating Lionikis. The other testified that he translated *Miranda* warnings into Spanish for Sanchez and that Sanchez told him that he understood the warnings. Sanchez did not call any witnesses at the bench trial. His counsel conceded that Sanchez had committed a battery on Lionikis. Counsel argued, however, that Sanchez did not commit aggravated kidnapping or aggravated battery because he did not secretly confine Lionikis or cause her great bodily harm. Sanchez made a motion for directed finding on these points, which the court denied.

After closing arguments, the trial court made an oral ruling finding Sanchez guilty of aggravated kidnapping and aggravated battery. After his conviction, Sanchez filed via counsel a motion for a new trial, arguing that the prosecution did not meet its burden

of proof on the issues of great bodily harm (as to aggravated battery) or secret confinement (as to kidnapping). In the motion, Sanchez also argued that he had been denied due process and equal protection and that the trial court's rejection of his motion for directed finding was in error. The court denied the motion and sentenced Sanchez to concurrent terms of five and eighteen years in prison.

Sanchez, still represented by counsel, appealed to the Illinois Appellate Court, making two arguments relating to his sentence. First, he contended that that his sentence should have been reduced, given his rehabilitative potential, his dedication to his family, and his having taken responsibility for his actions. Second, he argued that he was entitled to two additional days of credit for the time he served in custody prior to his sentencing. Sanchez did not raise in his appeal any issues regarding the sufficiency of the evidence or rulings before or at the bench trial.

The appellate court affirmed Sanchez's sentence in April 2011, and Sanchez filed a petition for rehearing. The appellate court struck the motion but then appointed a public defender to determine whether such a motion should be filed. The assigned public defender reviewed the record and informed the court that she did not find a basis for a petition for rehearing. Upon learning this, the appellate court let stand its order rejecting Sanchez's appeal. *See* Resp.'s Ex. I. As indicated earlier, Sanchez did not file a PLA in the Illinois Supreme Court challenging that judgment, nor did he file a post-conviction petition in the Illinois courts.

**B.    Sanchez's habeas corpus petition**

On July 10, 2011, Sanchez filed a petition for a writ of habeas corpus in this Court. As the Court noted previously, this petition and the associated proceedings were

3

"plagued with procedural missteps." *Sanchez*, 2013 WL 4836697, at *2. Sanchez did not use the proper form for the petition, nor did he comply with the Court's order to resubmit the petition using the proper form. The Court dismissed Sanchez's initial petition because he did not comply with the Court's orders, but the Court did not say whether the dismissal was with or without prejudice. Sanchez then tried to appeal the dismissal, but the court of appeals declined to issue a certificate of appealability. Sanchez then filed a motion to appeal *in forma pauperis*, which was accompanied by a letter stating Sanchez's habeas corpus documents to that point had been prepared by another inmate because Sanchez did not read, write, speak English, or understand legal matters. Sanchez stated he relied on the other inmate to file the proper documents, but had since acquired the help of a different, bilingual inmate. Sanchez then stated he did not know how to proceed.

The Court granted Sanchez's *i.f.p.* motion, and Sanchez sought another certificate of appealability, which the court of appeals again declined to issue. Sanchez then asked the court of appeals to recall the mandate so that he might file a new habeas corpus petition in this Court; the court of appeals also denied that motion. At this point, the bilingual inmate helping Sanchez became unavailable until August 9, 2012, at which point Sanchez completed the proper form and submitted it to this Court. By then, however, Sanchez was thirty-four days past the one-year cutoff for filing his petition. On that ground, Gaetz moved to dismiss Sanchez's petition, arguing that equitable tolling should not apply because Sanchez had not shown the necessary extraordinary circumstances or diligence.

The Court rejected these arguments and denied Gaetz's motion to dismiss in

September 2013. Gaetz's response to Sanchez's petition followed, in which Gaetz argued that all of Sanchez's claims are procedurally defaulted because he did not present any of them in a PLA to the Illinois Supreme Court. Gaetz also attacked the merits of each individual claim. Sanchez did not file a reply by the date set by the Court and did not request an extension of time.

## Discussion

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *see also Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). This is a "highly deferential standard for reviewing claims of legal error by the state courts." *Id.*

### A. Procedural default

Sanchez asserts five claims in his habeas corpus petition. First, he argues that his right to due process was violated because the verdicts on the charges against him were legally inconsistent, in that he was found guilty of "greater and lesser included offenses based on one course of conduct." Pet. at 10. He argues in the alternative that this violated the prohibition against double jeopardy. Second, Sanchez contends that he was deprived of effective assistance of counsel at the trial level for four reasons. His

trial attorney, Sanchez says, failed to 1) investigate affirmative defenses; 2) investigate whether *Miranda* warnings were read to him and whether he understood them, along with whether police notified the Mexican consulate of his arrest and whether police knew of his intoxication at the time of his arrest; 3) call proper defense witnesses; and 4) submit a post-trial motion based on the legally inconsistent verdict argument. Third, Sanchez argues that he was convicted on the basis of insufficient evidence, because the prosecution did not prove beyond a reasonable doubt that he had secretly confined Lionikis or inflicted great bodily harm upon her. Fourth, Sanchez says his appellate counsel was ineffective for failing to assert his legally inconsistent verdict argument, the double jeopardy argument, and trial counsel's ineffectiveness for not filing a motion for acquittal regarding the inconsistent verdict. Finally, Sanchez argues that the state violated his right to due process because it "fail[ed] to correct, or bring attention to the proper corrective measures of, Mr. Sanchez's criminal proceedings." *Id.* at 13.

As indicated earlier, Gaetz contends that all of Sanchez's claims are procedurally defaulted. Specifically, Gaetz argues that Sanchez did not assert any of his claims on direct appeal to the Illinois Appellate Court or before the Illinois Supreme Court in the form of a petition for leave to appeal, as required by *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Gaetz is correct that *O'Sullivan* requires habeas petitioners to have "give[n] the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *Id.* at 845. This means that a petitioner must have "invoke[d] one complete round of the State's established appellate review process," which includes "a petition for discretionary review in Illinois'

Supreme Court." *Id.* "In Illinois, which has a two-tiered appellate review system, a petitioner must present a claim at each level of the state court system, either on direct appeal or in post-conviction proceedings." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013).

Sanchez did not pursue on appeal any of the claims he presents in his habeas corpus petition. In fact, with the exception of his sufficiency-of-the-evidence claim, which he presented in a motion for new trial filed before the trial court, Sanchez has not presented to any Illinois court any of the claims in his habeas corpus petition. The Court concludes that Sanchez's claims are procedurally defaulted.

A court may excuse a procedural default and go on to consider the merits of a habeas corpus claim if a petitioner can show "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). A petitioner can also overcome a default by demonstrating that "failure to consider his claim would result in a fundamental miscarriage of justice (i.e., a claim of actual innocence)." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (internal quotation marks omitted). Sanchez, however, does not argue either cause and prejudice or actual innocence. On his petition form, he does note that he did not seek leave to appeal in the Illinois Supreme Court because "I did not know the procedures – Englis[h] Language barrier." Pet. at 2. However, neither language ability nor youth, lack of education, or illiteracy establishes cause to excuse a defaulted claim. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). And there is no basis in the record to believe that Sanchez would be able to successfully pursue a claim of actual innocence.

The only conceivable way that Sanchez might be able to excuse his default

7

would be to show that his appellate counsel rendered ineffective assistance by failing to assert his claims on appeal. But Sanchez cannot assert that excuse, because it, too, is defaulted: he never asserted in state court a claim of ineffective assistance of appellate counsel. See Edwards v. Carpenter, 529 U.S. 446, 451–53 (2000) (holding that ineffective assistance of counsel claims themselves must "be first raised in state court" and are not immune from procedural default rule); Lee v. Davis, 328 F.3d 896, 901 (7th Cir. 2003) (Edwards "established that the assertion of ineffective assistance as a cause to excuse a procedural default in a § 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted."). Thus the record does not reflect any basis on which Sanchez's procedural default of his claims may be excused. This requires dismissal of Sanchez's petition.

The Court again notes that Sanchez never filed a post-conviction petition in state court, which would have provided the occasion for him to argue that his appellate attorney rendered ineffective assistance by failing to pursue Sanchez's claims on appeal. Sanchez's ability to file a post-conviction petition has by now almost certainly expired, given the six-month statute of limitations on such petitions, a clock that starts to run "from the date for filing a certiorari petition" when the petitioner has not filed such a petition. See 725 ILCS 5/122-1(c). In Sanchez's case, under People v. Wallace, 406 Ill. App. 3d 172, 177, 941 N.E.2d 436, 440 (2010), the six-month clock likely began running on July 6, 2011, which is nearly three years ago.

For these reasons, the Court dismisses Sanchez's petition on the basis of procedural default. The Court notes that it is theoretically possible that Sanchez might still be able to file a state post-conviction petition despite the six-month limitation, by

8

alleging "facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c). If Sanchez believes that he can make the necessary showing in connection with a late-filed state post-conviction petition, he may file with this Court a motion for reconsideration of this Court's dismissal of his habeas corpus case, discussing why the Court should defer ruling on his habeas corpus petition, to permit him to pursue an ineffective assistance of appellate counsel claim via a state post-conviction petition.

**B.     Certificate of appealability**

When a district court enters a final judgment that dismisses a prisoner's habeas corpus petition, it must issue or deny a certificate of appealability (COA). "[F]ederal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners" in the absence of a COA. *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A court should issue a COA if it determines that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). When a district court denies a claim on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The Court's decision that Sanchez's claims are procedurally defaulted is not fairly

9

debatable. The Court therefore declines to issue a certificate of appealability.

**Conclusion**

For the foregoing reasons, the Court denies Sanchez's petition for a writ of habeas corpus [docket no. 5]. The Court also declines to issue a certificate of appealability. The Clerk is directed to enter judgment in favor of respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 2, 2014